UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAIMLERCHRYSLER SERVICES,

      Plaintiff,

v.

SUMMIT NATIONAL,

      Defendant.

_____/

Case No. 02-71871

Honorable Nancy G. Edmunds

**SUPPLEMENTAL OPINION REGARDING DAMAGES PROOFS**

In this Court's April 8, 2004, Order Denying DCS's[1] Motion for Summary Judgment, the Court discussed the potential damages in this case. The Court noted that if Summit proves a copyright infringement, it can recover "either actual damages plus any non-duplicative profits made by the infringer, or statutory damages." (Doc. 213.) These theories of damages are provided by 17 U.S.C. § 504(b) and § 504(c), respectively. The Court went on briefly to discuss Section 504(b) damages, and concluded by finding that summary judgment in favor of DCS was inappropriate. This Supplemental Opinion is intended to provide guidance for the parties as they prepare for trial. It addresses the two areas of damages under Section 504(b)--actual damages and profits. While it does not address any one particular motion, the discussion below supplements the Court's rulings on the parties' motions in limine, many of which touch upon or depend upon the following issues.

_____

[1] As in previous Court documents, Plaintiff DaimlerChrysler Services is referred to here as "DCS." Defendant Summit National, Inc., is referred to as "SNI."

I.   **Actual Damages**

If successful in its copyright infringement action, SNI is entitled to recover from DCS "actual damages suffered by him or her as a result of the infringement . . . ." 17 U.S.C. § 504(b). Professor Nimmer's copyright treatise points out an important limitation of this section of the Copyright Act, however: "[N]either its text nor the Committee Reports attempt to define the nature of those actual damages." Nimmer on Copyright § 14.02.

In the present case, DCS has admitted that ALAS was so critical to its business that without ALAS (or some suitable substitute), it would have had to shut down. SNI points out the obvious fact that ALAS was worth more to SNI than it was worth on the open market. Thus, SNI argues, actual damages should not be measured by the market value of ALAS, but should rather be measured by the value of ALAS to DCS.

DCS frames the issue differently. It contends that the actual damages computation should have nothing to do with the unique facts of this case, and that SNI's actual damages should be limited to what it reasonably would have charged for ALAS--in other words, fair market value. In DCS's words, SNI "is arguing that it had DaimlerChrysler over a barrel, and that this subjective factor should be taken into account in calculating its 'reasonable royalty.'" (Doc. 296 at 27.)

The Court is satisfied that DCS's description of actual damages is most consistent with the purposes of the Copyright Act and the case law interpreting it. In one leading case, the Second Circuit stated, "The question is not what the owner would have charged, but rather what is the fair market value." *Davis v. The Gap, Inc.*, 246 F.3d 152, 166 (2d Cir. 2001). In another, the Seventh Circuit described the appropriate inquiry as "the amount a willing buyer would have been reasonably required to pay a willing seller at the time of the

2

infringement for the use . . . ." *McRoberts Software, Inc. v. Media 100, Inc.*, 329 F.3d 557, 569 (7th Cir. 2003).

Neither of these formulations permit the sort of actual damages recovery SNI now seeks. The Court holds that SNI may not rely on its own subjective estimate as to the price it would have charged DCS given DCS's predicament. To recover actual damages, SNI must introduce evidence of the fair market value of ALAS at the time of the infringement. In other words, "the amount a *willing* buyer would have been *reasonably* required to pay . . . ." *McRoberts Software*, 329 F.3d at 569 (emphasis added).

## II.    Profits

In addition to actual damages, Section 504(b) provides that SNI may recover "any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b). The Copyright Act goes on to describe a burden-shifting analysis:

> In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

*Id.*

SNI relies on this language for the proposition that it needs only to allege DCS's gross revenue, and that the burden then shifts to DCS to show what portions of revenue are not attributable to the alleged copyright infringement. SNI fails to recognize, however, that what sets this case apart from most typical Section 504(b) damages questions is that DCS is not alleged to have sold the infringing product. Rather, DCS is only alleged to have used

3

ALAS to make money through other means--namely, automobile financing.  In other words, any profits attributable to DCS's alleged infringement are *indirect* profits.

SNI relies largely on *McRoberts Software*, in which the court upheld a large damages award against the defendant, applying the straightforward burden-shifting analysis for profits damages.  329 F.3d at 568-69.  But while SNI describes *McRoberts* as a "recent decision in the computer software area" (Doc. 297 at 19), it fails to mention that the defendant in that case had sold the infringed software itself.  *Id.* at 562-63.  *McRoberts* does not address the precise issue of indirect profits.

SNI also relies on *Stenograph L.L.C. v. Bossard Associates, Inc.*, 144 F.3d 96 (D.C. Cir. 1998), a case in which the defendant had used the plaintiff's transcription software without license.  *Id.* at 97.  On appeal, the court held that the profits awarded were appropriate, based on the following discussion: "The amount . . . presumably represents Brossard Associates' total revenues . . . minus an estimation of expenses related to the use of [different, non-infringing] software . . . .  [A]fter Stenograph introduced the statement containing Brossard Associates' gross revenues for the relevant time period . . . , the burden shifted to Bossard under 17 U.S.C. § 504(b) . . . ."  *Id.* at 103.

Indeed, *Stenograph* supports SNI's position.  But the court makes no mention of the precise issue now facing this Court: Whether *all* of the defendant's profits are "attributable to the infringement," 17 U.S.C. § 504(b), merely because the plaintiff's software was an essential component of a larger profit-generating process.  The reasoning as to indirect profits in *Stenograph* is unpersuasive.

The most persuasive case that SNI cites is *Andreas v. Volkswagen of America*, 336 F.3d 789 (8th Cir. 2003), in which the defendant wrongfully used the plaintiff's artwork in

4

a television commercial for the Audi TT coupe.  The court recognized that the profits generated by sales of the TT coupe were not entirely attributable to the commercial alone, much less role played by the plaintiff's artwork.  *Id.* at 797.  Nevertheless, the court held that whether profits are "indirect" as opposed to "direct" is beyond the concern of Section 504(b):

> Although cases distinguish between direct and indirect profits, the statute does not.  We agree that in an indirect profits case the profits "attributable" to the infringement are more difficult to quantify.  But that difficulty does not change the burden of proof established by the statute.  The burden of establishing that profits are attributable to the infringed work often gets confused with the burden of apportioning profits between various factors contributing to the profits . . . .  The nexus requirement exists in both direct and indirect profits cases . . . .  Once that nexus is established in either a direct or indirect profits case, if "an infringer's profits are attributable to factors in addition to use of plaintiff's work, an apportionment of profits is proper.  The burden of proving apportionment (i.e., the contribution to profits of elements other than the infringed property), is the defendant's."

*Id.* at 796 (internal citations omitted).

DCS urges the Court to take a different approach, arguing that although it could not likely have carried on business without ALAS (or some suitable substitute), it does not follow that every cent of profit DCS generated was attributable to ALAS.  Its analogy is helpful in this respect: DCS could not operate without its toilets either, but that does not mean that all of its profits are attributable to commodes.

DCS cites (among other cases) *Lowry's Reports, Inc. v. Legg Mason, Inc.*, 271 F. Supp. 2d 737 (D. Md. 2003), a factually analogous case.  There, the defendant had wrongfully used the plaintiff's stock reports to give advice to its own customers.  *Id.* at 751.  The court reasoned,

> In the case of "direct profits," such as result from the sale or performance of copyrighted material, the nexus is obvious.  In the case of "indirect profits,"

5

> the nexus may be too attenuated.  The court "must conduct a threshold inquiry into whether there is a legally sufficient causal link between the infringement and the subsequent indirect profits."  It may deny recovery if the profits "are only remotely or speculatively attributable to the infringement."

*Id.* Applying the facts before it, the court denied the plaintiff's claim for profits as too speculative:

> Although it seems that some of [the defendant's] profits "should" relate to its infringing use of [the plaintiff's] Reports, the appearance defies reason . . . . [The plaintiff] has articulated no more than a speculative correlation.  It is utterly implausible that all of [the defendant's] profits resulted from its infringing use of the Reports.

*Id.* at 752.

The same analysis was followed in what appears to be the only case out of this Court to address the issue of indirect profits.  In *Rainey v. Wayne State University*, 26 F. Supp. 2d 963 (E.D. Mich. 1998), the defendant wrongfully used plaintiff's design in its advertising brochures.  The Court pointed out that profits damages "must be based on credible evidence, not speculation," and that "in cases where profits cannot be traced only to the infringing work but rather to a complex income stream, courts have required that plaintiff introduce detailed evidence linking gross revenues to the infringement."  *Id.* at 971-72.  The court held that because the plaintiff "failed to submit any credible evidence from which the fact finder could apportion profits attributable to the infringement," an award of the defendants profits was inappropriate.  *Id.* at 972.

The Court recognizes the difficulty with reconciling the above approaches.  The Court also recognizes that the text of Section 405(b) offers limited guidance.  But while the statute does not explicitly mention "indirect profits," it very clearly requires that recoverable profits be "attributable to the infringement."  17 U.S.C. § 405(b).  In the absence of direct

6

mandatory authority, the Court is persuaded by those cases placing a heightened initial burden on the copyright holder where profits are indirect.

To recover DCS's profits as provided by Section 504(b), SNI must do more than merely point to DCS's balance sheet.  To meet its initial burden, SNI must "establish[] a causal nexus between the infringing conduct and the infringer's gross revenue."  *Lowry's Reports*, 271 F. Supp. 2d at 751 (citing *Walker v. Forbes, Inc.*, 28 F.3d 409, 412 (4th Cir. 1994); *Mackie v. Rieser*, 296 F.3d 909, 915 (9th Cir. 2002); *On Davis v. The Gap, Inc.*, 246 F.3d 152, 160 (2d Cir. 2001)).  Clearly, DCS's entire gross revenue is not attributable to ALAS source code.  It is therefore incumbent upon SNI to make a threshold showing of the nexus between DCS and those profits generated by the infringement of ALAS.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  January 26, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 26, 2006, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager

7