UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAIMLERCHRYSLER SERVICES,

    Plaintiff,

v.

SUMMIT NATIONAL,

    Defendant.
_____/

Case No. 02-71871

Honorable Nancy G. Edmunds

**ORDER GRANTING PLAINTIFF'S MOTION FOR REQUEST FOR RULING ON LACK OF COPYRIGHT NOTICE AND COPYRIGHT PRESUMPTIONS [310] AND DISMISSING DEFENDANT'S COPYRIGHT CLAIM**

Plaintiff DaimlerChrysler Services ("DCS") has filed a Motion for a "Ruling on Lack of Copyright Notice and Copyright Presumptions." This Motion arises out of the recent stipulation by Defendant Summit National, Inc. ("SNI"), that the ALAS 6.0 source code that it licensed to DCS in 1983, which is the subject of this lawsuit, did not include a copyright notice.

SNI has argued that notwithstanding this recent development, its copyright claim against DCS remains viable. "Because ALAS was not 'publicly distributed,' but was instead provided only to licensees with limited rights to use ALAS, no copyright notice was required under 17 U.S.C. § 101 and 405." (Doc. 297 at 14; Doc. 314 at 2.)

Because ALAS contained no copyright notice, SNI must rely on the doctrine of "limited publication," which alleviates the copyright notice in certain instances, described by Professor Nimmer as follows:

> A limited publication has been held to be a publication "which communicates the contents of a manuscript to a definitely selected group and for a limited purpose, without the right of diffusion, reproduction, distribution or sale." Thus, if an author distributes copies of his work to a circle of immediate friends with the express or implied understanding that such copies will not be duplicated or circulated, this is a limited publication. On the other hand, distribution to retailers for ultimate distribution to the general public in itself constitutes a general, not a limited, publication.

1-4 *Nimmer on Copyright* § 4.13[A] (footnotes omitted).

The facts of the present case[1] fall somewhere between Nimmer's two examples. SNI did not merely give copies of ALAS to a "circle of immediate friends," but neither did it distribute the software "to retailers for ultimate distribution to the general public."

The record reveals that Summit's predecessor, Stockholder Systems, Inc. ("SSI"), was in the business of marketing and selling ALAS to anybody interested in using it. D.R. Grimes, a former SSI official, testifies that SSI's software "dealt with different kinds of things that banks did, but it was primarily banking or companies that did bank-like functions, financial systems." These companies included "many corporations." (Doc. 315 Ex. 2 at 10.) He reiterated that SSI licensed its software products "to a variety of banks and other corporations." (*Id.* at 14.)

In addition to Grimes's testimony, a "Joint Venture Agreement" between SSI and Louisiana National Bank required SSI to develop a "comprehensive marketing program"

---

[1] At a hearing on March 21, 2006, this Court ordered SNI to submit a factual summary of its conduct regarding the publication (or lack thereof) of ALAS 6.0. On March 22, 2006, SNI filed a "Pretrial Brief Regarding Copyright Issues." (Doc. 314.) Rather than providing a factual summary in support of its argument that ALAS was not "publicly distributed" as the Court requested, however, SNI appears simply to have cut and pasted previously filed legal arguments into a new brief. (*See* Doc. 297 at 14-17; Doc. 314 at 2-6.) Thankfully, DCS has now provided the requisite record upon which to resolve this issue. (Doc. 315.)

for ALAS, which included the distribution of brochures, mass mailings of solicitations, and advertisements in trade journals.  (Doc. 315 Ex. 1 at 3.)

Finally, SSI's 1984 prospectus, prepared in conjunction with its initial public offering, states that "[a]lthough financial institutions have been and continue to be the principal customers of [SSI], recent marketing efforts have emphasized licensing of its products to utilities and industrial companies." The prospectus goes on to note that ALAS was licensed to fifty eight "Banks and Financial Institutions," two "Utilities," and ten "Corporate and Other."  (Doc. 315 Ex. 3.)

These facts set this case apart from the cases SNI relies upon.  In *Intown Enterprises, Inc. v. Barnes*, 721 F. Supp. 1263 (N.D. Ga. 1989), for example, the court noted that the materials at issue, building plans, had only been provided to a definite set of "subcontractors for bidding purposes" and "the appropriate governmental authorities for purposes of obtaining the required building permits."  *Id.* at 1265-66.  And in *Williams v. Arndt*, 626 F. Supp. 571 (D. Mass. 1985), the plaintiff, who had written a booklet on commodities trading, "sent a copy to about 10 of his more preferred customers who had ordered the booklet in response to a promotional flier Williams had limited to certain customers."  *Id.* at 573.

Contrary to SNI's argument, ALAS was not merely provided to a "definite, very selective group."  It was aggressively marketed to and provided to anybody who would pay money for it, including banks, corporations, and utilities.  The Court agrees with DCS and the cases it cites that the relevant inquiry is whether anybody who wanted a copy of ALAS could get one.  *See, e.g., D.C.I. Computer Systems, Inc. v. Pardini*, 1992 U.S. App. LEXIS 29951, *2-3 (9th Cir. Sept. 15, 1992) (limited purpose test not met where software was

licensed "to any automobile or recreational vehicle dealership in the country that would agree to enter into a contract" and the "purpose in distribution was pecuniary gain"). Viewed this way, SNI did not "limit" its *publication* of ALAS. At best, it limited its *marketing* efforts on the audience it deemed most likely to listen. This was not enough.

The Court is satisfied that SSI's publication of ALAS was not "limited" in the legal sense, and was sufficiently far reaching that copyright notice was required. Because ALAS 6.0 was not protected by the doctrine of "limited publication" and because the parties have stipulated that it contained no copyright notice, the software at issue is not protected under the law of copyright.

Being fully advised in the premises, having read the pleadings, and for the reasons set forth above and on the record, the Court hereby DISMISSES SNI's copyright claim. SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: March 27, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 27, 2006, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager

4