UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAIMLERCHRYSLER SERVICES,

      Plaintiff,

                                        Case No. 02-71871

v.

                                        Honorable Nancy G. Edmunds

SUMMIT NATIONAL,

      Defendant.

_____/

**ORDER REGARDING SUMMIT'S DAMAGES PROOFS**

The Court has taken into consideration arguments regarding the appropriate theory of recovery for Defendant Summit National, Inc.'s ("SNI") claims against Plaintiff DamilerChrysler Services ("DCS").[1]

Recently, the Court suggested that because of SNI's inability to recover damages under copyright, trade secret, or contract claims, its recovery will be limited to "[e]quitable relief under a *quantum meruit* theory based on DCS's continued use of ALAS after SNI terminated the Software Agreement." (Doc. 335 at 18.)[2] *Quantum meruit*, or "as much as deserved," measures recovery under a quasi-contract or contract implied in law, and is sometimes used interchangeably with those terms. *See, e.g., In re McKim Estate*, 606 N.W.2d 30, 33 (Mich. Ct. App. 1999) ("this Court has equated recovery under the equitable theory of contract implied in law with recovery in *quantum meruit*"). It is a "fiction[] of law

_____

[1]The relevant background facts may be found in the Court's earlier opinions.

[2]At the time of the Court's Order, SNI sought contract damages. It has since withdrawn its contract claim. (Doc. 337 Ex. 1.)

adapted to enforce legal duties by actions of contract, where no proper contract exists,

express or implied."   66 Am. Jur. 2d *Restitution and Implied Contracts* § 2.

The Michigan Court of Appeals has explained a contract implied at law as follows:

> A contract implied in law is not a contract at all but an obligation imposed by law to do justice even though it is clear that no promise was ever made or intended.  A contract may be implied in law where there is a receipt of a benefit by a defendant from a plaintiff and retention of the benefit is inequitable, absent reasonable compensation.

*In re Lewis Estate*, 423 N.W.2d 600, 603 (Mich. Ct. App. 1988).[3]  The same court has

quoted with approval the analysis found in Corpus Juris Secundum.  *Quality Prods. and*

*Concepts Co. v. Nagel Precision, Inc.*, 2000 Mich. App. LEXIS 2469, *16 n.6 (Mich. Ct.

App. Mar. 21, 2000).  That helpful discussion reads in part as follows:

> Contracts implied in law or quasi contracts, also called constructive contracts, are inferred by law as a matter of reason and justice from the acts and conduct of the parties and circumstances surrounding the transactions, and are imposed for the purpose of bringing about justice without reference to the intentions of the parties. . . .
>
> A quasi contract is not a contractual obligation in the true sense because there is no agreement; it . . . will be imposed by law even though it is clear that no promise was ever made or intended. . . .
>
> Generally, the creation of a quasi contract requires a lawful act, a benefit conferred on defendant by plaintiff, an appreciation by defendant of the benefit, and the acceptance and retention by defendant of the benefit under circumstances such that it would be inequitable for him to retain the benefit without payment for its value. . . .  A quasi contract is implied by law in order to remedy the wrongful enrichment of one party at the expense of another, and is designed to restore the aggrieved party to his former position by the return of the thing delivered or the money expended.

_____

[3]DCS states that "Georgia law applies to this case" (Doc. 37 at 17), apparently based on this Court's earlier conclusion that Georgia law applies to SNI's breach of contract claim.  As explained below, however, *quantum meruit* is not a claim for relief on the contract, and DCS has provided no reason to apply Georgia law to this non-contract issue. In any event, Georgia law does not appear significantly different than Michigan law.

2

42 C.J.S. *Implied Contracts* § 4 (footnotes omitted).

DCS argues that *quantum meruit* would be inappropriate here because there "cannot be an express and an implied contract for the same thing existing at the same time." (Doc. 337 at 12.) DCS relies on the "black letter law that a party cannot bring a *quantum meruit* claim where an express contract covers the same subject matter." (*Id.*) While DCS is correct about the law, it misapplies the facts of this case.

Although the ALAS source code at issue was at one time the subject matter of a contract between the parties, SNI terminated that contract, and DCS's post-termination use was unlicensed and extracontractual. "The existence of an express contract between the parties will not bar recovery under an implied contract theory where the recovery sought is for items not contemplated in the original contract." 5 Mich. Civ. Jur. § 222 (2002) (citing *Nugent v. Teachout*, 35 N.W. 254 (Mich. 1887)). Here, the extracontractual use was not contemplated at the time ALAS was licensed. Rather, DCS continued using ALAS for eighteen months based on its inability immediately to purge ALAS source code from its system and on the Court's Order allowing 180 days of post-termination use to "reach[] a delicate balance" between SNI's right to exclude DCS from using ALAS and the hardship facing DCS in transitioning to a substitution. (Doc. 75 at 22.) Because the post-termination use was not contemplated or a part of the contract, the Court will imply a contract at law for DCS's post-termination use of ALAS, and SNI is entitled to *quantum meruit* recovery for that period of time.

The more difficult question is how to measure SNI's recovery. In a typical *quantum meruit* case, the value of an object or service to a defendant will be roughly equal to its value to the plaintiff, making the measure of damages a relatively easy question. Under

3

the facts of this case, however, ALAS was worth much more to DCS than it was worth to SNI.  ALAS source code was integrated into DCS's leasing software, where it performed many vital functions.  But because of its intangible nature, DCS's use of ALAS did not actually "deprive" SNI of anything.  Not surprisingly, therefore, SNI wishes to focus on the value of ALAS to DCS, while DCS contends that *quantum meruit* recovery is measured by the reasonable value of ALAS to SNI.

SNI argues that despite this Court's dismissal of its copyright and trade secrets claims, its damages should be based on the same theory.  Purely under an "unjust enrichment" approach, SNI seeks to recover all money that DCS saved by continuing to use ALAS after SNI had terminated its license.

Relying on this Court's statement that DCS "may . . . discontinue its use of ALAS before 180 days to minimize the accrual of damages" (Doc. 75 at 22), SNI argues that the May 2003 Order was "consistent with the theory of unjust enrichment because it focuses on the daily value of ALAS to DCS . . . ."  While the Court has always understood damages to include DCS's post-termination use—which would be based in part upon how long DCS continued using ALAS—it does not follow that the damages are measured by DCS's savings.  In fact, the Court's language suggests nothing of the sort.  By agreeing with SNI's position, the Court would be forcing DCS to pay the market price to replace ALAS immediately after termination, which is exactly what the Court refused to do in the May

4

2003 Order.[4]  Contrary to SNI's argument, it would be more consistent with the May 2003 Order to focus on the value of ALAS to SNI.

DCS cites authority clarifying the difference between SNI's theory and its own: "Damages in unjust enrichment are measured by the value of what was inequitably retained.  In *quantum meruit*, by contrast, the damages are not measured by the benefit realized and retained by the owner but rather are based on the value of the services provided." *Paffhausen v. Balano*, 708 A.2d 269, 271 (Me. 1998).  This definition comports with the Corpus Juris Secundum description quoted above, which makes clear that a contract implied at law is "designed to restore the aggrieved party to his former position by the return of the thing delivered or the money expended."  42 C.J.S. *Implied Contracts* § 4.

The Court is satisfied that the appropriate measure of SNI's *quantum meruit* recovery here is based on the value of ALAS to SNI.  In other words, as the Court has explained many times before, how much money would a willing buyer have paid SNI for use of the ALAS source code at issue for eighteen months?  The answer to this question might be thousands or even millions of dollars.  Or it might be nothing.  Whatever the number is, it must not be based on the value of ALAS to DCS at the time of termination.[5]  Because DCS

---

[4]When imposing a permanent injunction on DCS's use of ALAS, the Court opted not to force DCS to replace ALAS immediately.  Instead, the Court permitted DCS to continue using ALAS for 180 days.  The Sixth Circuit affirmed this decision, describing it as "properly balanc[ing] the interests of the parties."  *DaimlerChrysler Servs. N. Am., LLC v. Summit Nat'l, Inc.*, 144 Fed. Appx. 542, 550 (6th Cir. 2005).

[5]Of course, SNI may rely on license fees that have actually been paid for ALAS, including the fee originally paid by Mercedes Benz Credit to Stockholder Systems.

had so substantially integrated ALAS into its leasing system, its replacement costs provide

a poor indicator of the market value of ALAS.

In sum, to recover *quantum meruit* damages on theory of contract implied in law, SNI

must come forward with evidence of what it reasonably could have charged a willing buyer,

in an open market, for eighteen months of use of the source code at issue.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  August 3, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record
on August 3, 2006, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager

6