UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAIMLERCHRYSLER SERVICES,

    Plaintiff,

v.

SUMMIT NATIONAL, INC.,

    Defendant.
                                      /

Case No. 02-71871

Honorable Nancy G. Edmunds

**ORDER (1) DISMISSING DEFENDANT'S *QUANTUM MERUIT* CLAIM
AND (2) DENYING PLAINTIFF'S MOTION FOR CONTEMPT AND SANCTIONS [350]**

    This drawn out case comes before the Court once again, this time on Plaintiff DaimlerChrysler Services North America, LLC's ("DCS's") motion for contempt and sanctions against Defendant Summit National, Inc. ("SNI"), filed on September 29, 2006. DCS argues that SNI is in violation of the Court's September 5, 2006 Stipulated Order Regarding Disclosure of Damages, (Docket No. 349) for failure to adequately respond as ordered by this Court.

    Further explication of the extensive history and factual development of this case would be immaterial to the Court's resolution of the instant dispute between the parties, and is not necessary here.[1] That said, it is worth noting that SNI's sole remaining claim sounds in *quantum meruit* for DCS's use of ALAS for eighteen months, per the Court's May 22, 2006

---

[1] For a summary of the salient facts and procedural history of this matter, see the Court's May 22, 2006 Order. (Docket No. 335.)

Order (Docket No. 335) which dismissed SNI's claims for copyright infringement, misappropriation of a trade secret and breach of contract.

In its September 5, 2006 Order, which is at issue here, this Court required SNI to disclose the following information relating to its claim of *quantum meruit* damages by September 15, 2006:

> 1. What amount does Summit claim is the "amount it could have charged a willing buyer in an open market for eighteen months of use of the source code at issue" (the "Quantum Meruit Damages")? With respect to the Quantum Meruit Damages, please identify the exact amount of those damages, the methodology and calculations used in arriving at that amount, any documents which support or relate to the claimed damages or calculations and any witnesses (and a synopsis of their testimony) expected to be called to support such damages.
>
> 2. To the extent that Summit claims any damages not identified in response to Interrogatory No 1, please identify the exact amount of those damages, the legal theories upon which those damages are based, the facts supporting the elements of such legal theory, the methodology and calculations used in arriving at the claimed amount of damages, any documents which support or relate to the claimed damages or calculations and any witnesses (and a synopsis of their testimony) expected to be called to support such damages.

In response, SNI submitted the following answer:

> The amount is $3.225 million. The methodology and calculations were described on the record on November 3, 2005. Summit will rely on the documents that were supplied as exhibits at that hearing. An additional document is attached. Summit will also introduce previously identified documents reflecting the volume of leasing business, locations and users for the leasing portfolio that was run on ALAS: DCS lease revenue (Wood #1); DCS system statistics; list of ALAS users (DC 1187-1213); list of ALAS users (Inglese #1 and #2). In addition, Summit intends to introduce those documents produced by DCS under a protective order that reflect amounts that DCS has paid for software licenses. Ken Duffy, Sr. and/or Ken Duffy, Jr. will testify to these damages consistently with the testimony provided on November 3, 2005. A representative of DCS is expected to testify concerning DCS's leasing activity, portfolio management system and the price that DCS paid for software licenses.

(SNI's Responses to Interrogatories, DCS's Mot. for Contempt, Ex. 2.)

DCS argues that SNI's answer is substantively defective, in that SNI continues to rely on damage theories and evidence that the Court has previously ruled are inapplicable to the calculation of *quantum meruit* damages in this case. Specifically, DCS asserts that SNI's claim is supported by theories involving ALAS's value to DCS, incorporates a per-user license fee structure in the damages calculation, and claims a $3.225 million damage figure, all of which have been previously stricken by this Court.[2] DCS also notes that the testimony of both Ken Duffy, Sr. and Ken Duffy, Jr. offered in SNI's answer would be improper. The Court agrees with DCS's assertion regarding these deficiencies, and will address each in turn.[3]

First, SNI's answer indicates that its damages calculation is partially supported by DCS's "volume of leasing business, locations and users for the leasing portfolio that was run on ALAS: DCS lease revenue; DCS system statistics; list of ALAS users," (internal citations omitted) and the amounts that DCS paid for other software licenses. In its August 3, 2006 Order clarifying the extent of SNI's available *quantum meruit* damages, however, this Court stated that any damages "must not be based on the value of ALAS to DCS at the

---

[2]As to DCS's claim that this Court previously struck a damages figure of $3.225 million, SNI accurately notes in its Response that the Court struck the $3.225 million figure with regards to its traditional breach of contract claim, but not the post-termination *quantum meruit* claim. (SNI's Resp. at 6 (quoting Nov. 3, 2005 Tr. at 110, lines 22-24, appearing in the record as DCS's Mot. for Contempt, Ex. 4, hereinafter the "Hearing Transcript").) Therefore, SNI's response is not necessarily deficient for this reason.

[3]DCS also argues that SNI's answer fails to provide the methodology behind the damage calculation, the documents supporting that calculation, and a synopsis of any witness testimony, as required by this Court's September 5, 2006 Order. The Court will focus on the claimed deficiencies regarding SNI's factual support for its damages figure, however, because a failure to identify damages under the proper framework outlined in this Court's prior opinions would completely undercut SNI's sole remaining claim sounding in *quantum meruit*.

time of termination."[4] (Docket No. 341 at 5.) Since all of SNI's asserted information on this point is only informative of DCS's use of ALAS, or what DCS may have paid to license other software besides ALAS, these are not proper considerations in assessing SNI's *quantum meruit* damages.

Shifting to the issue of per-user license fees, SNI's answer incorporated Ken Duffy, Sr.'s remarks from the November 3, 2005 evidentiary hearing. There, Duffy, Sr. stated that the $3.225 million figure was a product of the number of ALAS users at DCS. (Hearing Transcript at 84.) At the close of the hearing, the Court struck any per-user license fee for lack of foundation, (*Id.* at 106-07) and even Duffy, Sr. himself admitted that an ALAS license had never been sold on a per-user basis. (*Id.* at 84.) For these reasons, a damage calculation that relies upon a per-user basis is inappropriate for further consideration.[5]

The final piece of evidence in contention is the testimony of Ken Duffy, Sr. and Ken Duffy, Jr., as SNI claims they will support the damages figure "consistently with the testimony provided on November 3, 2005." At the close of that hearing, however, the Court stated that Duffy, Sr. lacked the requisite foundation to testify regarding damages on this

---

[4]The Court reached this conclusion by noting the distinction between *quantum meruit* damages, where such amounts are measured in reference to the plaintiff's expenses incurred to provide the services at issue, and unjust enrichment, which uses the value of the benefits retained by the defendant as the basis for that theory's damage calculation. As SNI's remaining damages sound only in *quantum meruit*, it necessarily follows that the value of ALAS to SNI is the sole evidence that could support SNI's claim to damages at this stage of the case.

[5]Furthermore, the licenses that served as the basis for SNI's per-user valuation in the evidentiary hearing were for Optima, a Windows-based successor to the mainframe application ALAS. Thus, these per-user values have little to no correlation with a hypothetical per-user value for an ALAS license. For this additional reason, the Court finds this method of valuing SNI's *quantum meruit* damages inappropriate.

4

issue, (*Id.* at 97) and Duffy, Jr. never testified at the hearing at all. Thus, neither individual's testimony provides support for SNI's *quantum meruit* damages claim.

As seen in its response to DCS's motion for contempt, SNI persists in disregarding the Court's narrowing of the appropriate theories for calculating its damages, as well as the evidence and individuals that may be used to establish a foundation for these figures. At this stage, the time for arguing over the proper methods for calculating damages is over-- the Court has reiterated several times what cannot be considered. The Court is convinced that SNI's failure to respond within the boundaries outlined in its prior opinions and proceedings is indicative of the fact that SNI is unable to produce admissible evidence that the value of ALAS 6.0 in the marketplace is anything other than zero. Therefore, the Court finds that DCS's use of the ALAS source code did not cause SNI any *quantum meruit* damages, SNI's remaining claim is DISMISSED as a matter of law for failure to establish this element of a viable *quantum meruit* claim against DCS, and the case is hereby DISMISSED.

Finally, DCS's motion for contempt and sanctions is DENIED as moot.

SO ORDERED.


s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: February 13, 2007

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 13, 2007, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager

5